*John C. Healy* and *Malcolm McAvoy*, for plaintiffs.

*Stephens, Lincoln & Stephens*, contra.

---

## LIABILITY FOR INJURIES TO ONE FALLING DOWN AN OPEN ELEVATOR SHAFT.

[Circuit Court of Lucas County.]

THE CHAMBER OF COMMERCE BUILDING COMPANY v. FREDERICK M. KLUSSMAN.

Decided, October 31, 1903.

*Negligence—Tenant of a Building Attempts to Enter an Elevator— Door Open and Elevator at an Upper Floor—Tenant Falls to Bottom of the Pit—Rule as to Passenger and of Reasonable Care— Previous Condition of Door—Emergency Necessitating a Discharge of Jury.*

1. Where the wife of a juror dies during the trial of a cause, and the juror states that owing to his bereavement he will not be able to perform the duties of a juror for the time being, and one of the parties to the trial is unwilling to proceed with eleven jurors, an emergency has arisen which falls within the provisions of Section 5195, authorizing a court to discharge a jury.

2. In a suit for damages on account of a fall down an elevator shaft, where the claim is made that the door of the shaft was open at a time when the cab was absent, and a probable reason for the door being open was that the latch was out of order, permitting

the door upon being closed to rebound and remain open, it is
admissible to show that on previous occasions the door had be-
haved in that way, as tending to show a previous and continuous
defective condition, and notice thereof to the defendant.

3. One who has a right to ride on an elevator is not required to make
a full and attentive observation before attempting to enter the
cab, but if he finds the door of the shaft open he is at liberty
to assume the presence of the cab, and to rely to some extent
at least upon its being there; and one in that situation is en-
titled to the benefit of the rule applying to a passenger on an
elevator.

PARKER, J.; HAYNES, J., and HULL, J., concur.

The action in the court below was by Klussman against The
Chamber of Commerce Building Company to recover for an
injury claimed to have been sustained through the negligence of
the defendant company in allowing a door leading to an ele-
vator shaft in the Chamber of Commerce building, where Mr.
Klussman was a tenant, to remain open, whereby he was misled
supposing the cab of the elevator to be there, and walked into
the shaft and fell to the bottom thereof and was severely in-
jured.  He recovered in the court below a verdict for $5,000,
which amount the court required him to reduce to $2,500, and
judgment was entered for that amount.  But The Chamber of
Commerce Building Company, not being satisfied, prosecutes
error here.  It contends that the court erred in discharging
a former jury which had heard a part of the testimony in the
case.

It appears that while the trial of the case was in progress
the wife of one of the jurymen died, and that necessarily re-
quired a cessation of the trial for a while; and afterwards it
appears that the juror came into court and reported that he
would not be able to sit in the case any more at that term on
account of his bereavement, and the court, upon consideration
of the matter, discharged the jury.  One of the parties was
ready to proceed with the remaining jurors, but the other party
was not, and the court holding that the other party could not
be compelled to proceed, there was nothing left for the court
to do but to discharge the jury; and we think that this was an

emergency coming within the provision of Section 5195, Revised Statutes, authorizing a court to discharge a jury, and that there was nothing in that of which the plaintiff in error had a right to complain.

It is said that the court erred in admitting certain testimony at page 56 of the record, and turning to that page we find some testimony upon the subject of the condition of the elevator upon former occasions. One of the complaints about this elevator was that the boy who operated it was negligent in leaving it open; another was, that the hook on the door was out of order and that when the door was pulled shut it would not latch or lock and remain shut but would rebound, and that the door was open upon this occasion through the negligence of the elevator boy in failing to shut it, or in consequence of such defect in the lock, and this question was asked:

"You may state what you observed and how the door operated that day?," referring to a former occasion. This was objected to, the objection overruled and defendant excepted. The witness answered: "I went in to take the elevator and the car was not there. I waited, oh, a moment, I guess, and the car came down and I stepped inside, and the car started and the elevator boy pushed the door to and it flew back; my attention was called to it, and I called his attention to it."

Now we think that that was competent on the question of whether the lock of the elevator worked properly, or whether it was out of order, and whether it was probably in consequence of that that the door was open upon the occasion that the plaintiff below received his injury, and in that view we are sustained by a decision in 21 Colorado Reports, page 435, *The Colorado Mortgage & Investment Co.* v. *Rees*, which is directly in point; and we think too that the ruling rests upon reason and does not require very much authority. The third paragraph of the syllabus is as follows:

"Where, in an action for damages for injuries sustained by falling down an elevator shaft, the scope and tendency of the plaintiff's evidence was to show that the elevator door was open at the time of the accident because of the defective condition

of its lock, as claimed by plaintiff, it is admissible to show that the door was open at times antecedent to the accident in corroboration of that claim, and as tending to show a previous and continuous defective condition and notice thereof to the defendant.''

The important question in this case, and the one most debated is whether the plaintiff below was guilty of contributory negligence. It appears that upon the occasion when he was injured, he left his office on the second floor and went to the elevator and inquired of the boy operating it where he could find a hammer which he required for opening a box of goods in his office. The boy stated to him that he could probably obtain a hammer from the janitor on the floor next below, and thereupon he went into the elevator and was taken by the boy down to the floor next below, to-wit, the first floor of the building, and went to the room of the janitor, which was some seventy-five or eighty feet from the elevator, made known his wants to the janitor, was furnished with a hammer, and came back to the elevator. The door was open, as I have said, and supposing that the elevator-cab was still there—and without stopping to make careful observation—he walked right in and fell down to the bottom, some fifteen or sixteen feet, and was injured. It appears that the hallway was reasonably well lighted by the sun. This accident happened about three o'clock in the afternoon and there was no necessity for any artificial light in the hall, and, customarily, artificial lights were in the cabs. The plaintiff says there was no artificial light on this occasion, but we think the preponderance of the evidence establishes the fact that there was a light in the cab. This elevator-shaft accommodated two elevators, running side by side and both opening out into the main hall. The one upon which plaintiff had come down one floor was the easterly elevator of the two; being one that was sometimes used for freight, it having a place below that where passengers ride for the carriage of freight, although it was a regular passenger elevator. The testimony convinces us that there were electric lights burning in both elevator cabs.

The question is, whether the plaintiff below was guilty of negligence that will defeat his recovery because of his having

failed to make such observation before he attempted to get
into the cab as would have disclosed to him that there was no
cab there—as would have disclosed to him that he was going
to walk into a pit. Our attention is called to a number of cases
decided by courts of last resort in different states, in some of
which it has been held that a person going to an elevator shaft
where a door was open, and falling down, was negligent and
could not recover, and some holding that it was not negli-
gence, but the circumstances of each case differ from every
other. It would be interesting to refer to those cases and discuss
them somewhat, but for lack of time it can not be done by us
to-day. As in other cases of negligence so in elevator cases,
each case stands upon its own facts, and it seems to us that
these cases cited to us were all correctly decided and that they
are not inconsistent with one another, though somewhat peculiar
results seem to be attained. In Massachusetts there is a some-
what different rule of law as to the burden of proof, or the
method of presenting a case than that generally prevailing upon
the subject of contributory negligence. It appears that in
Massachusetts it devolves upon the plaintiff to establish in the
first instance that he was free from negligence—that he was not
guilty of contributory negligence—and that, as I understand
it, is by virtue of a statute of that state.

It is apparent that if the plaintiff had made careful observa-
tion, he would have discovered that there was no elevator-cab
at this point at that time. The record discloses that the jury
viewed the premises, and therefore we felt at liberty to view
the premises, and did so. We discovered that the back part of
the elevator-shaft is plastered and that it has a somewhat yel-
lowish color, similar to the walls of this court room; that the
shaft has in front open iron-work; that the doors are of some-
what the same character, and that the cab at the back is open
iron-work, so that one looks through this iron-work and sees the
yellow background of the plastered wall at the back part of the
shaft, and our observation was that, whether there were lights
in the cab or not, it would not be apparent to one approaching
the elevator to ride in the cab that the cab was there or that

the cab was absent, unless he made a somewhat careful observation. We came to this conclusion from the testimony of the witnesses as well as from our own observation, we having made observation when the cabs were there and also when the cabs were not there, and when they were lighted and when they were not lighted.

We are convinced by the testimony and by these observations that we felt at liberty to make, that one hurrying along about his business, with his mind somewhat preoccupied, his attention and his thought not drawn directly to the question whether there was an elevator cab present or not—making a casual or a hasty observation with the door open—would not readily observe the absence of the cab. If those cabs were made with solid backs, having a different color from the wall of the shaft, for instance, the wall being black and the back of the cab white, or vice versa, then it would be apparent in an instant. Upon the occasion of the accident, according to the evidence, the westerly cab was down, and it had an electric light burning in it, and we observed the situation there with that state of facts existing, and our conclusion is the same upon that.

Now it does not appear from the authorities that one is required—one who has a right to ride upon an elevator—to make full, careful and attentive observation, but if he finds the door of the shaft leading to the cab, or where the cab ought to be, open, he is at liberty to assume its presence and to rely to some extent at least upon the cab being there. We are not prepared to say that one might walk blindly into a place of that kind without looking at all and yet be free from negligence, but if a hasty and cursory observation of the situation would lead one to suppose that the cab was there, we do not believe that under the authorities he would be charged with negligence if he proceeded upon that assumption. It is clear that that is what the defendant did here; he supposed the cab was there; he assumed that it was there; he did this because of the door being open and because of the general appearance of things not attracting his attention to the fact that the cab was not there. Of course, if he had looked carefully down toward the floor,

he would have observed that there was no floor there for him to step upon. And directly upon this subject is the case of *Tousey* v. *Roberts,* 114 N. Y., 312, and where it is held:

"An elevator in a building, for the carriage of persons, is not supposed to be a place of danger, to be approached with great caution; on the contrary, it may be assumed when the door is thrown open by an attendant, to be a place which may be safely entered without stopping to look, listen or make a special examination."

We think the court charged the jury very carefully as well as very fully in this case and that the plaintiff in error had no reason to complain of the charge. It is in some respects very favorable indeed to the plaintiff in error. In our opinion the defendant in error was entitled, under the circumstances existing at the time, to the rule applicable to a passenger upon an elevator. He went there for the purpose of taking a passage upon it and had a right to do so, and yet the court charged against him upon that proposition, and charged that the rule touching a passenger was not applicable to that situation. The court charged the jury that he must exercise ordinary care in approaching the elevator to discover whether there was a cab there or not, notwithstanding the fact that the door was open; and we are not prepared to say that the jury was wrong in finding that he exercised ordinary care, nor can we say that, as a matter of law, he was guilty of contributory negligence, and therefore we feel obliged to affirm this judgment.

*John F. Kumler, J. Kent Hamilton,* for plaintiff in error.
*E. L. Twing, George E. Wells,* for defendant in error.